E5s6ara1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                            13 CR 811(ALC)

MARTIN AVALO, ALVARADO
DOMINGUEZ, EDWIN ARAUJO,
GUILLERMO ARAUJO, MIGUEL
ARAUJO and BRYAN ALTAGRACIA,

                Defendants.

------------------------------x
                                         New York, N.Y.
                                         May 28, 2014
                                         10:30 a.m.

Before:
                    HON. ANDREW  L. CARTER,

                                         District Judge


                        APPEARANCES
PREET BHARARA
     United States Attorney for the
     Southern District of New York
JASON A. MASIMORE
     Assistant United States Attorney

DAVID S. GREENFIELD, ESQ.
     Attorney for Defendant M. Avalo

IRA LONDON, ESQ.
     Attorney for Defendant A. Dominguez

WILLIAM STAMPUR, ESQ.
     Attorney for Defendants E.  Araujo, M. Araujo, B. Altagracia

JAMIE BAGLIEBTER, ESQ.
     Attorney for Defendant G. Araujo
Also present:  Emma Greenwood, Discovery Coordinator
```

E5s6ara1

          (In open court; case called)

          THE DEPUTY CLERK:  Counsel, please state your appearance for the record.

          MR. MASIMORE:  Jason Masimore for the government.

          THE DEPUTY CLERK:  For the defendants.

          MR. STAMPUR:  Good morning, Judge.  William J. Stampur for Edwin Araujo, who just raised his hand.  He is in the jury box.

          I am also standing in, your Honor, for two codefendants who actually out on bail.  Miguel Araujo just raised his right hand and Bryan Altagracia.  Mr. Epstein represents Miguel Araujo, and Mr. Altagracia's lawyer Mr. Watters is in the middle of a homicide trial Bronx County.

          MS. BAGLIEBTER:  Good morning, your Honor.  Jamie Bagliebter representing Guillermo Araujo, second closest to the bench.

          MS. GREENWOOD:  Good morning, your Honor.  Emma Greenwood coordinator discovery attorney.

          MR. LONDON:  Good morning, your Honor.  Ira London for Alvarado Dominguez, who is in the jury box on the far right.

          MR. GREENFIELD:  Good morning, your Honor.  David Greenfield representing Martin Avalo, who is raising his hand.

          THE COURT:  Good morning everyone.  Let's check in and get an update on the status of discovery in this case.

          Where are we?

1          MR. MASIMORE:  Yes, your Honor.  Since the
2     government's last letter we have been pulling together
3     additional materials.  For example, we have been receiving
4     certified -- may be sit down to be closer to the mic?
5          THE COURT:  Certainly.
6          MR. MASIMORE:  We received certified DNA files from
7     the Office of the Medical Examiner.  We have gone through now
8     and redacted the portions of those that need to be redacted as
9     we get them on a rolling basis.  I now have a few thousand
10    pages that I just Bates stamped last night that I will be able
11    to include in the next production.
12         Additionally, we have other materials.  For example,
13    Edwin Araujo at his apartment had a DVR system, a digital video
14    recorder surveillance system of his own.  That was seized and
15    searched pursuant to the search warrant at the time of the
16    takedown.  That contains a lot of footage that needs to be
17    produced and we have a hard drive with some of that material on
18    it.  We'll certainly make available the full recording.  That
19    type of evidence has video evidence of certain of the
20    defendants inside that apartment and then leaving during
21    burglaries and then coming back and wearing similar clothing to
22    people who were on the video surveillance at the various
23    burglaries.
24         We also have historical cell site information that has
25    been coming in as we made applications.  I have a stack, I

1  would say, a quarter inch to a half inch thick of some of the
2  newer applications to turn over to defense counsel.  It is of
3  the same nature of other applications that have been made in
4  the case.  It not of a different type.
5          We also have various insurance documents, some
6  additional surveillance video on different dates and we have
7  telephone subpoena returns.
8          There is a fairly large volume of materials that we
9  have been continuing to collect, but it is not the same degree
10 as what has already been produced.  We have discussed with
11 defense counsel about whether to produce things on a strict
12 rolling basis.  That is, when it comes to my desk get it out or
13 whether we should keep it and manage it into groups so it is
14 easier to manage.  As I understand, keeping it and producing it
15 in a bigger bulk group is what the defense would like because
16 it makes it easier to keep track of it and to review it and to
17 make it available to their clients.
18         The telephone subpoena returns, they come to us
19 produced in various formats from the phone companies and I
20 inquired with the defense as to whether they would just like
21 that mega data so they can get it quicker or whether they would
22 rather have us send it out to a vendor to have it Bates stamped
23 so they could keep track of it.  It doesn't take a long time,
24 but takes longer than my copying the lists and sending them
25 over.  They indicated they prefer to receive the Bates version.

1          We also have a large, I would say not larger than the
2     typical case, volume of recorded prison calls made while the
3     defendants have been in as well as their e-mails.  One thing I
4     did want to ask the Court about, my inclination had been to
5     make individual productions to each of the defendants rather
6     than making available all of each other's calls to each other.
7     I envision a scenario where as we continue to review those
8     calls and get closer to any trial, where some comment that is
9     made during a call may be relevant to the case and we may want
10    to put it in.  What I would propose to your Honor for your
11    Honor's consideration is whether as we get closer and we start
12    identifying calls that may be relevant that we include that in
13    sort of a rolling discovery as we get closer, rather than
14    having a blanket production, which I think given certain
15    tensions in the case it is probably not a great idea to have
16    everybody listening to each other's calls in this particular
17    case.
18         Also, I had mentioned in the letter, my last letter to
19    the Court and to the defendants, that we had additional GPS
20    tracking data.  That is all collected now.  What I propose is
21    putting this all together in coordination with Ms. Greenwood
22    and getting to the defense as soon as possible so they can
23    conduct an additional review.  So I think in terms of what
24    needs to be reviewed for the defense to adequately prepare for
25    trial and/or continuing negotiations with the government, these

1    materials would need to be reviewed and that make take some
2    time.
3              In terms of motions my thought is the additional
4    applications that I intend to present to them since they are of
5    the same type and nature, I don't think it necessarily has much
6    of an impact of what, if any, motions need to be made.
7              The last thing I wanted to bring up would be cell
8    phone contents.  We got search warrants for various locations
9    that included the ability to search cell phones.  We
10   additionally sought permission for a new warrant on various
11   phones that were seized.  We have the contents of those cell
12   phones now.  They have been analyzed and dumped.  What I would
13   propose producing to defense in the first instance, or at least
14   making available, would be the analytic reports rather than the
15   full contents at least for distribution because in many cases
16   these cell phones or lap tops or other electronic media that
17   have been searched contain inappropriate materials, videos,
18   photographs, etc.  We certainly would be willing to make
19   available for inspection whatever the defense would want to
20   look at; but in terms of disseminating it and in terms of
21   getting it to the defendants so they can review it, those
22   reports contain a lot of information and that is probably in my
23   view I would suggest the best way to go about that.
24             We would anticipate lastly in the not too distant
25   future applying for additional search warrants to search phones

that were obtained during the arrests.  Those phones have been in the continuous possession and custody and control of law enforcement and we've been focusing on discovery and getting the materials together.  Certainly those phones are vouchered.  Defense has been able and can inspect them at any time.  I wanted to flag that issue.  We would anticipate producing that in the same manner.  That is, making available whatever analytic reports are prepared once we obtain permission to search those particular phones that weren't covered by a previous premise warrants.

THE COURT:  Thank you.  So when will this production of discovery be complete?

MR. MASIMORE:  Right now I believe as of yesterday I am in possession of this full amount.  I would estimate that it would take the remainder of this week and two additional weeks to prepare that in a manner to get it out, including I think Bates stamping telephone subpoena returns.  I don't anticipate it taking longer than that.  Again, some of it I can make available very quickly.  Like GPS data, there is really no way to Bates stamp that.  There are portions that I can make available quicker; but as I understand it, and certainly I am open to suggestion, I think the defendants want it all at one time because it makes it easier.

THE COURT:  Let me hear from Ms. Greenwood.

MS. GREENWOOD:  Your Honor, everything that the

 1   government has briefed today has been distributed to counsel
 2   with the exception of getting to me a hard drive and I
 3   coordinated with him and expect to get that within the week.
 4              The last production was quite voluminous as was
 5   discussed at the last conference.  It took quite a bit of time
 6   for the data to transfer to all the drives for counsel.  They
 7   were distributed in the first and second weeks in May.  I
 8   wanted to make clear that though the production was produced in
 9   April, mid-April, counsel has only had a couple weeks to review
10   the materials.
11              As far as any outstanding issues, one issue that I
12   have learned of in the last day or two is with client review of
13   the facilities.  Apparently the clients are now allowed only
14   two hours or so at both the MCC and MDC to review the hard
15   drives that have been provided to the facilities.  I discussed
16   this with AUSA Masimore this morning.  Our plan is for me to
17   call the facilities and request additional time and see how
18   that works.  And if that doesn't resolve the issue, then I will
19   contact his office and see if they can intervene.  Unless the
20   Court has another suggestion, I think that might be the best.
21              MR. STAMPUR:  It's two hours a week.
22              MS. GREENWOOD:  I am actually a little unclear about
23   exactly how much time clients are currently allowed.  Two hours
24   a week counsel is telling me now.  I thought it was two hours a
25   day.  Os obviously we need to resolve the issue of not enough

time for clients to review the voluminous materials on the hard drives.  I think we have a plan to begin to address that.

Beyond that as AUSA Masimore just mentioned, I think it makes sense to have the government provide Bates stamps on materials as much as possible to help with the rather tremendous volume of materials.  My office of course will process anything that comes in on a rolling basis.  Other than that, I don't have too much else to address with the Court today.

THE COURT:  Thank you.  So these materials that have been produced are available at the MCC and MDC for the defendants to review them.

MS. GREENWOOD:  Yes, your Honor.

THE COURT:  There was some mention before the last time about some possible solutions to the issues at the facilities regarding iPods.  What has happened with that?

THE DEFENDANT:  Well regarding iPods, I have not approached the either facilities about providing iPods for audio.  I have generally spoken with each of the facilities.  They are not inclined to allow iPods generally on any case.  I actually have not had the occasion in this district to provide iPods to any clients on any case that I have been appointed to.  I have on other cases in other districts.

MR. MASIMORE:  Your Honor, if I may.  Just on the iPod issue, I have a case I think is still some pending before Judge

E5s6ara1

Cote with 49 defendants and massive discovery.  IPods were made available.  I can speak with defense about perhaps a way to do this.  We've done it in the past and we may be able to do something like this.  It wouldn't be conducive to reviewing historical cell sites or GPS, but to the extent there was a wire tap in this case with some audio and video.

THE COURT:  Both facilities?

MR. MASIMORE:  It was both MDC and MCC.

THE COURT:  Thank you.  Let me find out from the parties.  I will hold off on any motions to sever based on the number of defendants here until we get closer to a trial date.  Let me get a sense from the parties, if the parties can give me a sense, as to how long a trial would last in this case for the first set of defendants, whoever is in that first set.

MR. MASIMORE:  Your Honor, I think breaking it up into two groups, I do think the government's presentation could probably be expected to last three weeks.

THE COURT:  Does defense counsel have an estimate at this time?

MR. STAMPUR:  I wouldn't venture a guess, Judge.  I don't know if anyone else had a comment.

THE COURT:  Let me get in terms of the most time that you think it might take for if there is a defense case.  Obviously the defense has no burden to put on a case.  Given the outer limits, what are we thinking at this time?  Two

1   weeks?  Is an additional two weeks a fair estimate?
2             MR. STAMPUR:  I think that would be a fair estimate.
3             THE COURT:  Any other defense counsel have anything to
4   add in that regard?
5             MR. GREENFIELD:  No, your Honor.
6             THE COURT:  So we all think this trial shouldn't take
7   more than five weeks.  Obviously things change, but at this
8   point we think that a trial for the first set of these
9   defendants shouldn't take more than five weeks; is that fair?
10            MR. LONDON:  Yes.
11            MR. MASIMORE:  I think sort of the way the government
12  would anticipate it coming in, I think a lot of these records
13  would probably come in through document custodians and we would
14  ask for a lengthy period of time to make arguments based on a
15  lot of this data and put in a summary.  I think there are ways
16  we can streamline it.  I don't think it will take more than
17  five weeks.
18            THE COURT:  Again, I would like to perhaps try to get
19  a trial date set today just because we have so many defendants
20  and so many defense counsel so we can get some time blocked off
21  here.  I will hold off on any motions to sever until we get
22  closer to a trial date. As I mentioned before the Second
23  Circuit said I cannot try all 13 defendants at once.  That is
24  too many defendants to try at one time.  It makes sense to
25  break this into two group.  Before we talk about potential

E5s6ara1

trial dates, let me find out from the defendants if there are any issues regarding representations.  That was something I wanted to raise.  Again, before we set trial dates, I want to get a sense if there are applications for new counsel so we can deal with that.

Again, as I indicated to the defendants the last time, obviously if there are serious issues with you and your attorney, I want to hear that.  But be aware that that may cause a delay in terms of trial and I know that it was expressed by many defendants they did not want that.  Let me find out by a show of hands if there are any defendants who are requesting new counsel at this time, people sitting in the jury box?

I don't see any hands.

Individuals in the audience?

I don't see any hands either.

At this point it seems that the clients are at least generally satisfied with their counsel.  Let me get a sense from counsel.  Have counsel conferred about setting any potential trial date yet?

MR. MASIMORE:  No, your Honor.

MR. STAMPUR:  What haven't done that, your Honor, only because the government has informed us as to the massive amount of discovery that is forthcoming.  It is still premature to do that.  I just don't know when we are going to finish reviewing

E5s6ara1

1  all this discovery.  I have spent endless hours on the first
2  batch of discovery and nowhere near going through that and
3  Mr. Masimore has indicated there is another massive batch of
4  discovery that is soon to be delivered.  I just thought it was
5  premature to do that.
6           MR. GREENFIELD:  That being said, I agree with what
7  Mr. Stampur said.  We're missing two of the lawyers.  So while
8  we may among ourselves come up with a date, it may challenge
9  their trial schedules.  Maybe we're better off waiting until
10 the next date, having everybody here, and at that point
11 addressing the issue of respective trial date.
12          THE COURT:  I don't think I want to do that because
13 very well the next time we're here there may be counsel not
14 here.  When you have multiple defense counsel, you have defense
15 counsel otherwise engaged in other trials or something else.  I
16 want to certainly give the defense and I will give the defense
17 an adequate time of reviewing the discovery.  I am not setting
18 a trial date a month from now obviously since the discovery is
19 not going to be totally turned over until at least three weeks
20 and it may take a little bit longer than that -- I shouldn't
21 say a little bit.  It is going to take longer to make sure that
22 the discovery is available to the defendants at the facilities
23 and give counsel an opportunity to meaningfully review and
24 discuss it with their clients.  I would like to set a trial
25 date so that we don't run into issues later in terms of the

E5s6ara1

unavailability of counsel. Again, since it seems if in fact all 13 defendants are going to trial, we have to do this in two batches anyway. If the two attorneys who are not here cannot do it at that time, then they will be in the second batch I suppose.

So how is October the 6th? That is a date early in the fall. That should give everyone plenty of time to review discovery. How does October 6th work for counsel for the government?

MR. MASIMORE: That would be fine, your Honor.

THE COURT: Counsel for defense?

MR. STAMPUR: Well, actually it is bad for me. I have another case starting before Judge Stein. In addition, we haven't discussed reviewing the discovery and filing motions. I don't understand where the motions fit into that schedule. I am assuming that we'll get this discovery, right, and then we'll determine after we review it if it will take us more time than just the three weeks to file appropriate motions. Anyway, in response to that, I have an obligation November 10th so for me it is a problem.

THE COURT: The obligation is when?

MR. STAMPUR: November 10th.

MR. GREENFIELD: I have trial starting in early September, a case that will last into October.

THE COURT: The other counsel that are here is

E5s6ara1

1   October 6.  Does that work for the other counsel.

2            MR. LONDON:  I am starting a trial before Judge Wood
3   on September 29th.  That will run into that date.

4            MS. BAGLIEBTER:  October 6th will work for us.

5            MR. LONDON:  I could be available later in October.
6   Not the 6th because my trial is a week before and it could run
7   two weeks, but a little later in October I can be available.

8            THE COURT:  I think Mr. Stampur you indicated --

9            MR. STAMPUR:  November 10th.  I was going to suggest
10  myself since I have a trial in early March if we can put my
11  client into January that would be preferable for me.

12           MR. GREENFIELD:  I would join in that because I have a
13  September trial and I also have an August trial before Judge
14  Ramos.  So two back-to-back trials I would do.  I really would
15  like a January trial if I could have that.

16           THE COURT:  Are the other counsel available in early
17  January as well?

18           MS. BAGLIEBTER:  We're available in January.

19           MR. LONDON:  I have a trial before Judge Sweet in
20  January.  I don't know if it is going to go.  It is
21  January 14th.  Whether my client is going to go to trial is too
22  early to tell.  He set the trial date sometime ago for
23  January 14.

24           THE COURT:  Well, if we have three counsel who are
25  here present who are all available in January, and again for

E5s6ara1

today's status conference I have broken this up into two different batches, there very well should be counsel available in January as well.  It may seem appropriate to set a January trial date.

Will counsel for the government be available in January?

MR. MASIMORE:  Yes, your Honor.

THE COURT:  Tara, do we have a date in January?

THE DEPUTY CLERK:  First week, Monday, January 5th.

THE COURT:  And do we have five weeks after that?

THE DEPUTY CLERK:  I don't have my other calendar.

THE COURT:  That's fine.  Let's schedule the trial for January the 5th, 2015.  Obviously we'll have some interim dates between now and then to make sure discovery is progressing.  Let's check back in about two months.  Let's get a date some time in July.

THE DEPUTY CLERK:  July 17th.

THE COURT:  That should be fine.  Are counsel available on July 17th.

THE DEPUTY CLERK:  It is already set, Judge, 11:00.

THE COURT:  We'll come back Judge 17th at 11:00.

I want to make sure the defendants understand what is going on here.  We're going to move on as expeditiously as we can.  There is discovery that needs to be made available to and your lawyers.  Your lawyers may wish to make some motions

E5s6ara1

1  regarding some of the discovery, which will take some time to
2  decide.  We do have a trial date set for January 5th.  We'll
3  adjourn this until July 17th at 11:00.
4           As indicated early, I find this is a complex case due
5  to the number of defendants and due to the voluminous nature of
6  discovery in this case.  I further find that it is in the
7  interest of justice and interest of the defendants to exclude
8  time under the Speedy Trial Act from today's date to July 17th
9  so that counsel may review the voluminous discovery in this
10 case since the voluminous discovery may be made available to
11 the defendants so they can meaningfully review the discovery as
12 well.  Having said that, we're adjourned to July 17th.
13          Anything further from the government?
14          MR. MASIMORE:  No, your Honor.  Thank you.
15          THE COURT:  Anything else from defense?
16          MR. STAMPUR:  Just one thing, Judge.  I know it has
17 been discussed, and I don't want to be repetitious, but it
18 seems to me we have made every effort to allow the defendants
19 more time to review discovery.  It is so voluminous two hours
20 on one day a week is a real problem.  I know Mr. Masimore will
21 check into that with the MDC.  I appreciate that.
22          THE COURT:  I agree.  We need to make sure that the
23 defendants have a meaningful opportunity to review discovery in
24 the facility.  So let's have the parties work on that and let's
25 discuss that again on July 17th.  If the parties are not able

E5s6ara1

1   to resolve this with the facilities, let me know how I may be
2   of service.
3             MR. STAMPUR:  Thank you, Judge.
4             THE COURT:  Thank you.  Have a good day.
5                              o0o