F54TDOMS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        13 CR 811 (ALC)

5  ALVARADO DOMINGUEZ,

6              Defendant.

7  ------------------------------x

8                                    New York, N.Y.
                                     May 4, 2015
9                                    11:00 a.m.

10

   Before:
11
                  HON. ANDREW L. CARTER, JR.,
12
                                     District Judge
13

14                        APPEARANCES

15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   SEAN BUCKLEY
17      Assistant United States Attorney

18 AVROM ROBIN
        Attorney for Defendant
19

20

21

22

23

24

25

F54TDOMS

 1            (In open court, case called)

 2            MR. BUCKLEY:  Good morning, your Honor, Sean Buckley

 3    for the government.

 4            MR. AVROM:  Avrom Robin for Alvarado Dominguez, seated

 5    with me at the defense table, and I note we have about 15

 6    family and friends here, including ten adults, mother, sister,

 7    brother, nephew, niece, cousins and friends in support of

 8    Mr. Dominguez.  Thank you.

 9            THE COURT:  Good morning.

10            Good morning, Mr. Dominguez.

11            THE DEFENDANT:  Good morning.

12            THE COURT:  Are the parties prepared to go forward

13    with sentencing today?

14            MR. BUCKLEY:  Yes, your Honor.

15            THE COURT:  In preparation of today's sentencing I

16    received a submission from defense counsel with many letters

17    and certificates attached, a submission from the government.

18    And just today I received an additional cover letter from

19    defense counsel attaching letters from the mother of

20    Mr. Dominguez' biological daughters as well a letter from his

21    biological daughters.

22            Is there anything else that I should have, counsel for

23    the government?

24            MR. BUCKLEY:  Not from the government, thank you, your

25    Honor.

F54TDOMS

```
1              THE COURT:  Obviously I received and reviewed the
2    presentence report.  Is there anything else I should have from
3    the defense?
4              MR. AVROM:  No, Judge.
5              THE COURT:  Defense counsel, have you reviewed the
6    presentence report and discussed it with your client?
7              MR. AVROM:  Yes, I have, your Honor.
8              THE COURT:  Mr. Dominguez, have you had a chance to
9    review the presentence report with your attorney and discussed
10   anything that you might object to with him.
11             THE DEFENDANT:  Yes, your Honor.
12             THE COURT:  Counsel for the government, have you
13   reviewed the presentence report?
14             MR. BUCKLEY:  Yes, your Honor.
15             THE COURT:  So the defense, I believe, is objecting to
16   the criminal history category, which obviously affects the
17   sentencing guideline range.  Any there are other objections to
18   the presentences report by the defense?
19             MR. AVROM:  No, Judge.
20             THE COURT:  Are there any objections to the
21   presentence report by the government?
22             MR. BUCKLEY:  There are not, your Honor.
23             THE COURT:  Let me hear from the defense specifically
24   regarding their objection to Mr. Dominguez's criminal history
25   category.
```

F54TDOMS

1          MR. AVROM:  Thank you, Judge.

2          THE COURT:  Before you do that, so the record is

3  complete, I accept Mr. Dominguez' guilty plea.  He pled guilty

4  before the magistrate judge.  I reviewed the transcript and I

5  accept the magistrate judge's recommendation that I accept

6  Mr. Dominguez's guilty plea.

7          Go ahead, counsel.

8          MR. AVROM:  Thank you.

9          As your Honor noted, my objection, which really falls

10  under 3553(a), which is how the offense listed in paragraph 61

11  should be counted or weighed in the criminal history category

12  determination.

13          This 2004 youthful offender conviction at age 17 was

14  originally a Class A misdemeanor, and but for Mr. Dominguez'

15  violation of probation, it wouldn't get any points.  But

16  because he violated probation, he was sentenced to a year, it

17  gets two points.  And that's a correct calculation under the

18  guidelines.  My point is the way those two points affect the

19  total picture here.  And again, this conviction is ten years

20  old.

21          This ten-year old misdemeanor conviction increases his

22  guidelines because it jumps in from category three, criminal

23  history category three to criminal history category four, those

24  two points.  So this ten-year old conviction raises his

25  guideline range from 57 to 71 months, the stipulated range in

F54TDOMS

1    the plea agreement, to 70 to 87 months, the range in criminal

2    history category four.

3              My argument is that if you give this offense less

4    weight, I'm not saying no weight, the guidelines give it two

5    points.  If you give it one point, he would still be in

6    criminal history category three, and he would still be within

7    the stipulated range of the plea agreement.

8              So I think that putting him in criminal history

9    category four because of this offense, criminal history

10   category four includes people with three felony convictions,

11   and I think that clearly overstates the seriousness of

12   Mr. Dominguez' criminal history and gives this youthful

13   offender and violation of probation conviction an unfairly

14   heavy weight.

15             The guidelines, as your Honor knows, address the issue

16   of a determined criminal history overrepresenting the

17   seriousness of the defendant's criminal history.  That's at

18   4A1.3(b)(1).

19             THE COURT:  So just to be clear, it sounds like -- I

20   don't want to put words in your mouth, but it sounds like

21   you're not objecting to the notion that this youthful offender

22   adjudication/conviction counts under the guidelines, and that

23   the guideline calculations set forth in the presentence

24   report -- you're not objecting to the guideline calculation as

25   set forth in the presentence report and you're not objecting to

F54TDOMS

1    that conviction being included in his criminal history

2    category, but instead you are asking me to either vary from the

3    guidelines under 3553(a) or perhaps to downwardly depart

4    horizontally from the guidelines under guideline 4A1.3.  Is

5    that what you're saying?

6         MR. AVROM:  I'm asking for the first, a variance under

7    3553(a), because I am precluded by the plea agreement from

8    asking for a downward departure.

9         THE COURT:  Just to be clear, the guidelines are no

10    longer mandatory.  I'm not required to adhere to the sentencing

11    guidelines, but we are still required to determine the

12    guideline range that applies.  So that's what I was trying to

13    get to in terms of any objection.

14         Let me ask, is there any objection to the guideline

15    calculation as set forth in the presentence report?  I

16    understand you want me to vary from that guideline

17    determination, but is there any objection to the inclusion of

18    this offense in the criminal history category, and is there any

19    objection to the guideline determination, the guideline

20    calculation set forth in the presentence report?

21         MR. AVROM:  No, Judge.

22         THE COURT:  Counsel for the government?

23         MR. BUCKLEY:  We believe it's properly included, your

24    Honor.

25         THE COURT:  All right.  So based on the lack of any

F54TDOMS

objection, based on my own independent evaluation of the

guidelines, I accept the guideline calculation as set forth in

the presentence report, which takes us to a total offense level

of 23, criminal history category four, and a guideline

imprisonment range of 70 to 87 months.

I will hear the parties regarding anything they wish

to say regarding the appropriate sentence, starting with

defense counsel.

MR. AVROM:  Thank you, Judge.

So the criminal history -- my 3553(a) argument is that

the criminal history of four overstates the seriousness.  And I

think I have already laid out my objections to the youthful

offender conviction in paragraph 61 so that your Honor

understands them.  But I think the most effective point is

that, again, I'm not asking you to discount it, I'm asking you

to count it as one point and not two.  And by doing so,

Mr. Dominguez would then still remain in criminal history

category three, because he would have a total of six points,

not seven, if you count it as two.

Am I being clear about that, Judge?

THE COURT:  I believe so, yes.  My question then is

what about the fact that from the presentence report it appears

that on the date that he pled guilty and received the youthful

offender adjudication there was another case that was dismissed

as a result of that.  Paragraph 68 details another arrest, a

F54TDOMS

subsequent arrest to August 26, 2003 arrest for the attempted

grand larceny, paragraph 68, the arrest on December 2nd of

criminal sale of marijuana in the fourth degree, and it looks

like that was dismissed due to the conviction on that other

case.

What can you tell me about how I should consider that

in terms of how to count that?  You're saying I should count

that as one point instead of two points.  What about the fact

there was another arrest that was dismissed as a result of him

getting his break in 2004?

MR. AVROM:  Could I have a moment, Judge?

THE COURT:  Sure.

(Pause)

MR. AVROM:  Your Honor, Mr. Dominguez tells me this is

for one $10 bag of marijuana, and that sale is consistent with

his history, which was set out in the PSR, as a drug abuser.

So I'm asking you not to count that.  I think that is so small

and so old that it should not be part of your analysis.

THE COURT:  That marijuana sale is not counting under

the guidelines.  I'm saying it seems to militate against what

you're saying, that the other conviction that is counted under

the guidelines is so old and so -- I gather from what you say

is that it so old, he was so young, it was a misdemeanor, it

wasn't a big deal.  But it seems like at the time that he pled

to that misdemeanor that wasn't a big deal there was another

F54TDOMS

1   misdemeanor that you're also telling me that wasn't a big deal

2   that is not counted under the guidelines.  And it seems to me

3   that kind of cuts against your argument that I should count

4   this as -- that I should cut this one in half.

5            MR. AVROM:  Well, I don't think it cuts against that

6   argument because I'm submitting that it's such a small offense,

7   another day and time it might have been written up as a simple

8   possession.  It's one bag, $10 bag, so I don't think it really

9   cuts against my argument.

10           THE COURT:  What do you mean by that, another day and

11  time?  According to the presentence report, it was a sale of a

12  bag to an undercover officer.  I don't know at what time that

13  would have counted as simple possession.

14           MR. AVROM:  I think the way these things plead out

15  depend on the circumstances in the criminal court at the given

16  time.  I'm not disputing that it was a sale to an undercover

17  police officer, I'm just -- my point is that the amount

18  involved is so small.

19           THE COURT:  But it seems that you want me to infer

20  from that that that's the only bag that he sold that day, was

21  selling at that time, that he was the unluckiest marijuana

22  seller in 2003 on December 2nd, and the first bag that he sold

23  of $10 that he got caught right then and there.

24           MR. AVROM:  I don't think I'm suggesting that, Judge.

25           THE COURT:  All right.  Let me hear you on the rest of

F54TDOMS

1    your arguments.

2          MR. AVROM:  I would also like to address paragraph 62,

3    which is a conviction for knowingly introducing dangerous

4    contraband into a prison, and this gets two points.  And I'm

5    not disputing anything about this, but I want to supply some

6    additional explanation to your Honor about this offense.

7          Mr. Dominguez was working at the time in construction

8    with his uncle, who is in the audience, and this work is also

9    referred to in the PSR as something he did from time to time

10   off the books.  And the box cutter which contained the blade

11   was in his pocket because they were doing drywall and other

12   kinds of work that day.

13         Mr. Dominguez at that point in time had been a visitor

14   to the jail any number of times and knew full well you couldn't

15   bring in a box cutter or a blade, and not only that, so he --

16   it was in his pocket by accident, he forgot to take it out, and

17   was going to or coming from work.  It wasn't an intentional

18   attempt to introduce a blade into a prison.

19         And as Mr. Dominguez points out to me, and I think

20   your Honor knows this, there are already blades in the prison,

21   there are safety razor blades made into knives, other objects

22   which are fashioned into weapons.  So on two counts, that he

23   had already been to the jail a number of times and knew he

24   would be searched, and two, that there was no reason to

25   introduce a blade into a prison because there are blades

F54TDOMS

1    already there, as a way of explaining that conviction.

2            THE COURT:  What can you tell me, if you know, about

3    the requirements of his probation when he was a youthful

4    offender?  I know his youthful offender probation was revoked,

5    and it seems it was revoked approximately four months after he

6    got arrested on this incident you're talking about now, but

7    there was a condition of his youthful offender probation that

8    he not associate with known felons, and he knew the person he

9    was visiting with was a felon.  What can you tell me about

10   that?

11           MR. AVROM:  Mr. Dominguez doesn't recall if there was

12   such a prohibition in his probation convictions, and I haven't

13   seen them, so I don't know.

14           I'll move on to my argument under 3553(a).  Another

15   issue I want to touch on here is duration and relative

16   culpability.  According to the PSR, Mr. Dominguez was involved

17   for a period of three months here.  According to the government

18   information and conversations I had with them, he was involved

19   for four months.  That's in a charged conspiracy in the

20   indictment of a three-year period.

21           In terms of number of offenses, the PSR lists four.

22   The government detailed for me seven that they felt they could

23   prove at trial that he was involved in.  And that's, again,

24   against an offense conduct of over a hundred burglaries.  So

25   I'm asking your Honor to consider that Mr. Dominguez is at a

F54TDOMS

1    lower level of culpability than many of his -- or at least some

2    of his defendants -- co-defendants in this case.

3              Moving on to some personal factors --

4              THE COURT:  Hold on just for a moment, please.

5              Go ahead, please.

6              MR. AVROM:  Moving on to last prong of my argument,

7    Judge, the personal issues.  Mr. Dominguez is 29 years old now.

8    He's been in for 18 months.  His disciplinary record at MDC has

9    been clear that whole time with the exemption of one minor

10   incident on the very first day he was arrested for making an

11   improper telephone call at a point in time when he wasn't aware

12   of the rules.

13             The presentence report recommends that he be sent to a

14   residential drug abuse treatment program consistent with his

15   substance abuse issues, which according to the PSR, and of

16   course, I agree, likely contributed to his involvement in this

17   offense and explains the circumstances set out in the

18   government's letter of yesterday.  The government goes at some

19   length, in fact, in their letter to detail evidence that he was

20   dealing marijuana from his apartment.  And I'm not trying to

21   minimize that conduct, but I'm saying that it's consistent with

22   his drug abuse history and his need for treatment.

23             The presentence report also says that Mr. Dominguez

24   has the potential to become a productive member of society.

25   And your Honor sees here he's got a lot of family support, and

F54TDOMS

1    that's always an argument against the likelihood to reoffend.

2    Statistically, people with strong support systems reoffend less

3    frequently.  He'll be in his mid-thirties by the time he's

4    released in any event, whatever -- I think wherever you go in

5    the range or whichever range you go in.  He's going to have a

6    long time, Judge, to think about the consequences of his

7    criminal acts here and a long period of sobriety in custody to

8    clear his head and focus on getting back on track.  And

9    certainly he's aware that if there is a next time, he will be

10   facing a much longer sentence.

11        So I'm asking you, Judge, to show some leniency and

12   sentence him at the lowest sentence sufficient but not greater

13   than necessary.

14        As I said, I'm requesting a recommendation for the

15   residential drug abuse treatment program, and also for

16   designation to Danbury in Connecticut or Fort Dix in New

17   Jersey.  His mother, who is here today, lives in Connecticut.

18   So that would facilitate visits, which are also instrumental in

19   not reoffending.

20        THE COURT:  Let me hear from counsel for the

21   government.

22        MR. BUCKLEY:  Yes, your Honor.  I'm going to start by

23   just addressing a few of the points that Mr. Robin made in his

24   oral presentation.  The first I want to touch upon is the

25   argument that the Court should take into consideration -- take

F54TDOMS

1    into account his role vis-a-vis the roles played by his fellow

2    co-conspirators here.  And the crux of Mr. Robin's argument on

3    that point really centered upon the number of burglaries that

4    he participated in, as compared to the larger conspiracy, seven

5    of the 100 burglaries.

6         Respectfully, your Honor, the guidelines already

7    account for that role.  In paragraph 22 he was held accountable

8    only for the drug weights that related to the robberies in

9    which he participated or otherwise was directly tied.  So to

10   the extent that the question is whether there should be a

11   variance for role, the government submits that a variance is

12   not appropriate here, because his guidelines calculation, which

13   differs from that of his co-conspirators.  Other

14   co-conspirators were held responsible for much greater weights,

15   and other co-conspirators were held responsible for much

16   lighter weights.  So respectfully, we believe that the

17   guidelines calculation adequately accounts for his role.

18   There's no claim here that he was a leader, and there certainly

19   is no claim here that he was a minor participant.

20        The next point that I want to address, Judge, is the

21   clarifying facts that Mr. Robin has presented with regard to

22   the criminal conviction in paragraph 62.  Respectfully, Judge,

23   the defendant pled guilty to a crime.  He pled guilty to

24   knowingly introducing dangerous contraband to a facility.  The

25   explanation that has been provided here today at sentencing is

F54TDOMS

1      at odds with his guilty plea.  This crime has, as element, that

2      the defendant knowingly introduced that contraband.  His

3      explanation that it was an oversight or a mistake is an

4      absolute defense to the crime to which he pled guilty.  The

5      model jury instructions from the New York State courts for this

6      particular crime state that a person knowingly introduces

7      dangerous contraband into a detention facility when that person

8      is aware that he or she is doing so.

9              So the government believes the Court should reject

10     this post hoc effort by the defense to try to justify or

11     explain away a criminal conviction.  He pleaded guilty to it,

12     he was convicted of it, and the facts as set forth in the

13     presentence report should be considered by your Honor.

14             The next point I want to address is the argument that

15     the criminal history category somehow overstates the

16     seriousness of his offense here.  That's simply not true, your

17     Honor.  It is true that the initial conviction here goes back

18     to July of 2004, that the defendant was 17 years old when he

19     was arrested for that crime, and that is indeed ten years prior

20     to the defendant's current conviction.

21             But the reason it doesn't overstate the seriousness of

22     the offense, your Honor, is in the course of ten years the

23     defendant has been convicted of three separate crimes prior to

24     the instance crime.  So this crime makes it the fourth criminal

25     conviction in the span of ten years.

F54TDOMS

1          When you consider that, this isn't aberrant behavior.

2     This isn't an instance where it's a conviction of 20 years ago

3     and the defendant maintained a clean slate throughout.  Indeed,

4     the defendant didn't even comply with the terms of his

5     probation that he received for that conviction.  So in addition

6     to the four criminal convictions that he now sustained, he also

7     has a probation revocation.  And as your Honor noted before, he

8     received consideration on another arrest in exchange for that

9     plea.

10          So respectfully, your Honor, the defendant's criminal

11     history here I think anything but overstates the seriousness of

12     the offense.  When you look at the defendant's criminal

13     history, you can see a pattern developing, Judge, and it's a

14     pattern of increasing severity in the nature and extent of his

15     crimes, and it's also a pattern that demonstrate that lenient

16     sentences simply do not have the ability to deter this

17     defendant from engaging in further criminal conduct.

18          He received a lenient sentence of three years

19     probation, he couldn't even comply with that.  He received a

20     lenient sentence of one to three years imprisonment for his

21     role as to manager in a conspiracy to commit burglaries in

22     2007, and that didn't prevent him from doing this.  He was

23     paroled at the bottom end of that one- to three-year sentence

24     and yet he still turned around and engaged in this conduct.

25          And lastly, your Honor, and this is set forth in the

F54TDOMS

government's sentencing submission, but all of those factors,

all of which support a guidelines sentence here, a sentence

within 78 to 87 months, are further underscored by what was

recovered from the defendant's residence.  There was evidence

that he was continuing to engage in drug dealing, the

conviction for which -- or the arrest for which he received a

pass previously.  He is still dealing marijuana while he's

committing these burglaries.

As Mr. Masimore detailed in his sentencing submission,

your Honor, he's dealing marijuana out of an apartment that he

shares with an eight-year-old child.  But on top of that, there

is also evidence to support that he is engaging in other types

of burglaries.  There was the recovery of the fake NYPD

detective shield, a shield -- as noted in the search warrant

and as noted in the sentencing submission -- that was so

realistic that the detective who recovered it had to run the

number on the shield to determine that it was fake.

So when you take the defendant's criminal history,

when you take the fact that this defendant is engaging and

continuing to engage in serious crimes, indeed, in crimes of

increasing severity, and when you take the other factors about

this defendant's personal history, about his characteristics,

all of these factors, your Honor, support a guidelines sentence

in this case.  Such a sentence is sufficient but not greater

than necessary to deter this defendant whose presentence

F54TDOMS

1    investigation report demonstrates that there is a need for

2    specific deterrence as to this defendant.  It's necessary for

3    purposes of general deterrence so that other people out there

4    who have similar criminal history categories, who have similar

5    pasts to the defendants, will see that courts will not

6    entertain this type of behavior.  It's necessary for just

7    punishment here, and it's consistent with the defendant's

8    personal history and characteristics.

9         So for all those reasons, your Honor, the government

10   respectfully requests that the Court impose a guidelines

11   sentence as recommended by the probation office.

12        THE COURT:  Let me find out from the government, can

13   you tell me a little more about specifically Mr. Dominguez'

14   role in these burglaries?  He was present for these four

15   burglaries, but what was his role specifically?

16        MR. BUCKLEY:  Your Honor, unfortunately I don't have

17   the details of what he specifically did at the burglary,

18   whether he was someone responsible for sweeping prescription

19   drugs off of shelves or not.

20        But what I can say and what I confirmed with AUSA

21   Masimore is he certainly was not a leader.  There's no claim

22   that he's like the Araujo brothers here, there's no claim that

23   he was the mastermind behind this.  But AUSA Masimore confirmed

24   that he was a part of these robbery crews.  Of the ones in

25   which he personally participated, that he performed a function

F54TDOMS

1    that was comparable to that of his co-conspirators, such that

2    he is not like -- I think it was Albert Garcia and Miguel

3    Araujo who were minor participants.  Miguel Araujo was a look

4    out, for example.  He was not that.  He was a direct

5    participant in the burglaries in which he performed.

6            THE COURT:  Mr. Dominguez, I will give you an

7    opportunity to address me if you would like.  You don't have to

8    say anything, but if you would like, I will give you an

9    opportunity to address me.

10           THE DEFENDANT:  Good morning, your Honor.  During my

11   time incarcerated, I have continuously reflected on the damage

12   I have done to my community and the pain and suffering I have

13   caused my family and friends, the ones that I love most.

14           The hardest part is not being able to go back and

15   change what I have done.  I have used this time to find myself,

16   which I had not known along the way.  My faith and belief in

17   God is what has helped me through this time, as well as the

18   support of my family and friends.  I will not make excuses for

19   what I have done.  I don't blame anyone for my actions except

20   for myself.  It was a dark time of my life.  I had headed down

21   the wrong path, and unfortunately it took me being arrested to

22   notice that.

23           I want to apologize to my mother.  Words can't express

24   how remorseful and shamed I am of my actions.  It caused my

25   mother to lose our apartment, caused her a lot of pain and

suffering, and because of my actions she doesn't have a place to call home.  I never want to see my mother shed a tear.  I can't hurt my loved ones anymore.  I can change my life around, and I will.  Therefore, I make a promise to my mother, to God, as well as myself, to never go back to that life.  I owe it to my daughters to be a good influence on their lives.  I want to be there in ways I was never able to receive as a kid due to the fact my father passed away when I was a young kid.  I can only do that by staying away from criminal activities and staying positive.  I cannot change my past, but I promise you, your Honor, I can and I will change my future and grow from this experience never to wander down that dark path again.  I have found who I am, and most importantly, who I want to become.

        Working and setting a good example for my daughters, nieces and nephews is my top priority.  Upon my release, my brother awaits me with a job.  That's the first step in becoming a new me, sticking to my promise and not returning to a negative lifestyle.  I want to repay society by giving back and being a positive role model to my daughters, nieces and nephews.  I owe it to my community, myself, and most important, to my family and friends.  Unfortunately, it has taken this experience to help shine a light on my once dark world.

        Thank you for your time, as well as your patience and consideration in this matter.

F54TDOMS

 1          THE COURT:  Thank you.  Answer me something,

 2    Mr. Dominguez, tell me more about this job with your brother.

 3          THE DEFENDANT:  He's working for the owner of a

 4    building, and he's working as a doorman.  My uncle is helping

 5    repair the apartments, and I will be engaging in that.

 6          THE COURT:  Which part of that?

 7          THE DEFENDANT:  Repairing apartments, and when people

 8    move out we fix the walls and the floors.

 9          THE COURT:  And I note from the presentence report you

10    were involved in some construction prior to the accident that

11    you had.  I would like to get some information.  I note that

12    from the presentence report it says you have been unemployed

13    since that accident, but what is your physical condition?  Are

14    you able to do that type of work?

15          THE DEFENDANT:  Yeah.  What I'm not able to do is run

16    because my right leg is metal.  I have a metal plate and metal

17    screws.  I can't run, but in terms of my hands and stuff, yes.

18          THE COURT:  Is there any other reason why since 2008

19    you have been unemployed?  What was going on?  If you were able

20    to do this since then, why not do that work then?

21          THE DEFENDANT:  When I was released from my last time

22    I was incarcerated I was doing that until I got into the

23    accident.  That lasted about a year.  I was in a wheelchair.

24    Then with time I got the walker, then I got crutches.

25          THE COURT:  But after that, 2009 or so, 2010, is it

F54TDOMS

1    fair to say at that time, certainly at the time you were

2    engaged in this conduct in 2007, it's fair to say you weren't

3    using a wheelchair or walker then, right?

4            THE DEFENDANT:  No, your Honor.

5            THE COURT:  So just tell me, because it does seem from

6    the letters that I received from your family and everything

7    else that you have the potential to be a contributing member to

8    this society, and it seems you have a lot of family support,

9    and I am just curious as to why you have not used the

10   connections that you had then and worked an honest living back

11   then?

12           THE DEFENDANT:  Well, your Honor, truthfully I don't

13   have an answer to that, just that the drugs took over me, you

14   know, so I wasn't just thinking right.

15           THE COURT:  I will give defense counsel if you want

16   one family member if you want to have address the Court, I will

17   give you an opportunity to do that if you like.  It's not

18   necessary, but if you would like I will give you that

19   opportunity.

20           MR. AVROM:  Thank you, your Honor, for that

21   opportunity, but I really did not prepare for that.  I will

22   keep it in mind for next time.  Most judges aren't receptive to

23   that.

24           Unless someone would like to address the judge,

25   anyone?

F54TDOMS

1          Your Honor, they're not prepared to speak, and I think

2     they're all, understandably, intimidated by the setting.

3          THE COURT:  I understand.  Let me say to the family

4     and friends out there I want to thank you for the letters that

5     you submitted.  I take them very seriously.  I read all those

6     letters.  I would like to thank you for being here today and

7     showing your continued support for Mr. Dominguez.  I see from

8     the letters and everything else that he is someone who is

9     capable of turning his life around, but at some point it's up

10    to him.  There's only so much that you can do to continue to

11    support him, and he certainly needs your support while he

12    remains in custody, and certainly will need your support when

13    he is released.  But I want to thank you because these

14    decisions are very difficult, and I want to thank you for the

15    letters that you submitted to give me clearer sense of who he

16    is.

17         So Mr. Dominguez, tell me a little more about your

18    plans for when you get out.  Where are you planning on living?

19    What else are you planning on doing?  Tell me more about what

20    your plans are, because I have no doubt that -- I'm sure the

21    earlier times that you were arrested I'm sure that you weren't

22    planning on getting arrested again, I'm sure that you weren't

23    thinking that you were going to get involved in any other kind

24    of criminal conduct.  And what happens sometimes is that

25    there's not a plan in place, and if you're not occupied doing

F54TDOMS

1    something positive, it's easy to kind of fall into trouble or

2    have trouble find you.  So I'm really curious in finding out,

3    what exactly is your plan for when you get out?

4              THE DEFENDANT:  Well, to start off, I'm changing

5    location.  I'm going to live with my sister in Connecticut so I

6    could stay away from my past.  And just stay focused in working

7    with my uncle in construction.  I have been doing it for quite

8    some time, and that's something that I find that I like to do.

9              THE COURT:  Thank you.  Is there anything else from

10   the government?

11             MR. BUCKLEY:  No, your Honor.

12             THE COURT:  Anything else from the defense counsel?

13             MR. AVROM:  No, your Honor.

14             THE COURT:  I'll be back.  Let me think about this for

15   a moment.

16             (Recess taken)

17             THE COURT:  I had a few more questions for

18   Mr. Dominguez.  It's indicated in the report that you got some

19   substance abuse problems, and your attorney made reference to

20   that as well and asked in his sentencing submission that I

21   recommend the RDAP program at the Bureau of Prisons.  I want to

22   know if you have a plan for dealing with that as well, because

23   it seems, according to the report, at the time you were

24   arrested you were abusing alcohol, marijuana, and Percocet.

25   And I'm also kind of curious if you're still -- you were still

F54TDOMS

```
1   going to be needing Percocet or some kind of pain relief as a
2   result of accident and how you would make it to that.  Can you
3   tell me about that?
4             THE DEFENDANT:  At MDC I have been seeing my doctors
5   over there that have given me another medication that is not
6   addictive and it has the same effect.
7             THE COURT:  Do you remember the name of that
8   medication.
9             THE DEFENDANT:  (Shaking head)
10            THE COURT:  How will you deal with the marijuana and
11  the alcohol?
12            THE DEFENDANT:  Once I get out I will look for the AA
13  meetings and I could check into a drug program, as I said to
14  the PSR.
15            THE COURT:  Did you receive drug treatment earlier,
16  like in connection with your earlier arrests, was there any
17  drug treatment or anything?
18            THE DEFENDANT:  No.
19            THE COURT:  Anything else from the government?
20            MR. BUCKLEY:  No, your Honor.
21            THE COURT:  Anything else from the defense?
22            MR. AVROM:  No, Judge.
23            THE COURT:  Is there any reason that sentence should
24  not be imposed, counsel from the government?
25            MR. BUCKLEY:  Not from the government's perspective,
```

F54TDOMS

1   Judge.

2          THE COURT:  Counsel for the defendant?

3          MR. AVROM:  No, Judge.

4          THE COURT:  Mr. Dominguez, are you satisfied with your

5   legal representation up to this point?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  What's the government's position on

8   restitution?

9          MR. BUCKLEY:  Your Honor, as set forth in the

10  presentence investigation report, there are substantial losses

11  to the victims here that thus far I believe probation has

12  compiled I think it's close to $2 million in losses.  We would

13  request, as the statute permits, to have 90 days from the date

14  of imposition of sentence to try to finalize what those losses

15  are and identify the specific victims to which restitution must

16  be made and provide your Honor then with a proposed restitution

17  order, ideally on consent.  We can work can it out with

18  Mr. Robin.

19         THE COURT:  Okay.  And defense counsel's position on

20  that?

21         MR. AVROM:  That's fine, Judge.  If we set roughly 90

22  days out would be August 3rd.

23         THE COURT:  What's government's position on

24  forfeiture?

25         MR. BUCKLEY:  As pat of the defendant's plea agreement

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F54TDOMS

1   the defendant executed a proposed consent order of forfeiture.

2   So it involves forfeiture of, looks like four separate vehicles

3   which were identified in the order as the specific property, as

4   well as a money judgment in the amount of $75,000 in U.S.

5   currency.  So we would just ask that your Honor include

6   forfeiture in its oral pronouncement.  And if your Honor has

7   not been provided with the original proposed consent order I

8   will make sure that we get it to you later today.

9           THE COURT:  Okay.  Anything from the defense on that?

10          MR. AVROM:  I just note for your Honor's information

11  that none of the four cars actually belonged to the defendant,

12  I think they belonged to other co-defendants.

13          THE COURT:  Okay.  What's your position regarding

14  forfeiture?

15          MR. AVROM:  We're in agreement with the consent order.

16          THE COURT:  So I will order forfeiture in the amount

17  that -- you have the proposed order?

18          MR. BUCKLEY:  This does not bear the original

19  signatures, but I will get your Honor one as soon as possible.

20          And the money judgment, your Honor, is set forth an

21  page 4 of the proposed consent order, and it's on paragraph

22  one.

23          THE COURT:  So I will order, on consent, forfeiture in

24  the amount of a money judgment of $75,000 of United States

25  currency.  And the defendant has agreed not to contest any

F54TDOMS

criminal, civil or administrative forfeiture of the specific

property or file a petition for remission or to assist a third

party in asserting a claim or file a petition for remission

relating to the specific property with the Department of

Justice.

I will impose the $200 mandatory special assessments.

I will not impose a fine.  I will impose, on Counts One and

Two, a term of three years of supervised release to run

concurrently with each other.  I will impose the mandatory

conditions as set forth in page 4 of the presentence report.  I

will impose the standard conditions of supervision one through

13, with the following special conditions:

That the defendant participate in a program approved

by the United States Probation Office, which program may

include testing to determine whether the defendant has reverted

to using drugs or alcohol.  And I authorize the release of

available drug treatment evaluations and reports to substance

abuse treatment provider as approved by the probation officer.

The defendant will be required to contribute to cost

of services rendered in an amount determined by the probation

officer based on ability to pay or availability of the

third-party payment.

Also, that the defendant shall submit his person,

residence, place of business, vehicle, or any other premises

under his control to a search on the basis that the probation

F54TDOMS

1    officer has reasonable belief that contraband or evidence of a

2    violation of the conditions of release may be found.  The

3    search must be conducted at a reasonable time and in a

4    reasonable manner.  Failure to submit to a search may be

5    grounds for revocation.  The defendant shall inform any of the

6    residents that the premises may by subject to search pursuant

7    to this condition.  The defendant shall report to nearest

8    probation office within 72 hours of release from custody.  He

9    shall be supervised in the district of his residence.

10            I find that I have the authority to downwardly

11   department from the guidelines.  I have the authority to vary

12   from the guidelines.  I am not going to do so.  I believe that

13   a sentence of 70 months is sufficient but not greater than

14   necessary to meet the ends of sentencing.  I believe that is

15   sufficient to provide specific deterrence to Mr. Dominguez.

16   Again, those terms should run concurrently with each other.

17            So Mr. Dominguez, that is the sentence of the Court,

18   to be sentenced to a term of 70 months.

19            I know this is a difficult for you and your family.  I

20   will recommend that Mr. Dominguez be accepted into the RDAP

21   program at the Bureau of Prisons.  I will also recommend that

22   Mr. Dominguez, consistent with that recommendation, be

23   incarcerated in a facility as close to the New York City

24   metropolitan area as possible.

25            So Mr. Dominguez, I know it is difficult for you and

F54TDOMS

1    your family.  I hope that you can turn your life around.  I

2    hope you can kick your addiction.  I hope that you can make

3    choices in the future that you will be proud of and your family

4    will be proud of.  I know that it can be difficult sometimes to

5    resist the temptation of easy money, but as you see, there

6    really is no such thing as easy money.  So I hope that you take

7    advantage of the time that you are in custody.  I wish you the

8    best of luck.  I hope that I don't see you again for any

9    violation of supervised release.

10           And again, I would like to thank your family for their

11   letters of support and being here today.

12           Are there any open counts?

13           MR. BUCKLEY:  Not as to this defendant, your Honor.

14           THE COURT:  Mr. Dominguez, you have a statutory right

15   to appeal.  You should talk to your lawyer about that.  There

16   are time constraints on your ability to appeal.  If you cannot

17   afford to hire a lawyer to help you prosecute the appeal, the

18   Court will give you a lawyer for free.

19           Is there anything else from the government today?

20           MR. BUCKLEY:  No, your Honor.  Just one question, the

21   proposed restitution order, is that going to be August 3rd?

22           THE COURT:  Correct, that's August 3rd.

23           MR. BUCKLEY:  Thank you, your Honor.

24           THE COURT:  Anything else from the defense?

25           MR. AVROM:  No, Judge, thank you.

F54TDOMS

1            THE COURT:  Okay.

2                                o0o